# AGREEMENT

AGREEMENT ("Agreement"), made this 21st day of November, 2014, between FT TRAVEL-NEW YORK, LLC, d/b/a Frosch Travel ("FROSCH"), a Delaware limited liability company, and YTC TRAVEL LLC, ("YTC") with an office at 414 South Mill Ave, Tempe, AZ 85281.

WHEREAS, FROSCH and YTC operate independent retail travel agencies, each selling air transportation and other travel services to their clients;

WHEREAS, FROSCH and YTC intend that YTC shall transfer all of its business to an ARC (Airline Reporting Corporation) branch office of FROSCH at the YTC location; and in this regard, shall process all its client requests for air transportation using ARC facilities contracted to FROSCH; and

WHEREAS, FROSCH and YTC wish to memorialize their agreement in writing.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, FROSCH and YTC hereby agree as follows:

1. <u>Transfer and Reporting of Sales</u>.  Upon execution of this Agreement, FROSCH shall establish an ARC branch office of FROSCH at YTC's main location.  YTC acknowledges and agrees that FROSCH, as the owner of the branch, shall have full legal and financial responsibility to ARC with respect to the FROSCH YTC branch as required under the ARC Reporting Agreement.  Notwithstanding anything to the contrary in this Agreement, FROSCH shall have control of ARC Traffic Documents and the proceeds from sales of the same.  For purposes of this Agreement, "ARC Traffic Documents" shall have the meaning given to it in the ARC Reporting Agreement as amended from time to time.  Upon address transfer of FROSCH's ARC TO YTC'S head office, YTC shall begin reporting all of its airline sales through the FROSCH ARC.  Since YTC, and not FROSCH shall have the

1

responsibility to determine creditworthiness of YTC's clients, any default in payment to FROSCH by clients of YTC (whether with respect to amounts owed for travel, interest, or debit memos and/or recall commissions billed to FROSCH based upon travel sold by YTC) shall be the responsibility of YTC, and FROSCH shall be entitled, but shall not be required, to set off such defaults and other debits against any compensation owed YTC under this Agreement.

2. Compensation.

(a) Compensation- Up-front Commissions (commissions deducted from tickets) and Service Fee Income. YTC shall retain, be paid or be credited 100 (ONE HUNDRED) percent of up-front airline commissions and 100 (One Hundred) percent of net fees, hotel and car commissions paid to FROSCH YTC by suppliers of travel services or clients generated by the sale of travel or travel services via the FROSCH ARC. YTC shall receive $1.70 flat fee for all segments (less Sabre charges with detail to be provided from Sabre) on all Sabre bookings, and $2.45 flat fee per segment on all Travelport bookings, (less Travelport charges with detail to be provided by Travelport). *See addendum BL* YTC shall receive 50 (FIFTY) percent of backend airline overrides except for the Star Alliance to be paid at 80 (Eighty) percent, and Delta ,American, US Air, British Airways, Iberian, to be paid at 60(Sixty) percent; such monies will be paid to YTC by the 15th day of the following month such payments are received by FROSCH.

YTC shall receive, based on YTC's % of Airline business that it conducts with FROCSH the same % of Complementary Airline tickets FROSCH receives from All Airlines

3. Operating Expenses. All expenses of YTC's offices shall be paid solely by YTC, including, but not limited to salaries, benefits of all types (including insurance and statutory worker's compensation), payments to independent contractors, telephone, telefax, office supplies, postage and deliveries. YTC shall be solely responsible for allocating such monies attributable under this Agreement to its employees, independent contractors and shareholders. FROSCH shall bear no responsibility or liability for payments of any type to YTC's employees or outside agents, nor shall FROSCH be responsible to YTC's employees, assistants or outside agents for benefits of any type. FROSCH shall, in no way, be liable to YTC, their employees or agents, third parties, or any other person or entity to whom YTC may become indebted.

4. _Preferred Relationships_. YTC agrees, on behalf of themselves and any related shareholders, employees and travel consultants, to support and encourage, to the extent possible, the preferred relationships between FROSCH and its preferred suppliers in order to maximize revenues for FROSCH and YTC.

5. _Guaranty and Indemnity_. The individuals referred to as YTC in this agreement (and their spouses shall guarantee to FROSCH the performance of YTC's obligations under this Agreement and the payment of sums required to be paid to ARC in connection with the issuance of ARC Traffic Documents from the FROSCH branch, and shall execute personal guarantees, in the form attached as Exhibit A.

YTC shall indemnify and hold harmless FROSCH, its officers, directors, employees and YTCs ("Indemnities") from and against any and all liabilities, damages expenses, claims, demands, suits, fines, or judgments including, but not limited to, attorneys' fees, costs, and expenses incident thereto, which may be suffered by, accrued against, charged to, or recovered from the Indemnities arising from the negligent or wrongful act, error, or omission of YTC from their failure to perform this Agreement.

6. _Insurance_. Throughout the term of this Agreement, YTC shall carry and maintain, at their own cost and expense, a full complement of business and professional insurance, including but no limited to:

(a) Theft insurance, specifically covering employee theft (including unauthorized use) of ticket stock, with a limit of no less than $5,000 per occurrence.

(b) Statutory worker's compensation in the state where the FROSCH PARK AVE branch office is located, and employers liability insurance subject to a limit of no less than $500,000 per employee, $500,000 per accident and a $500,000 policy limit.

(c) Professional liability insurance with a limit no less than $1,000,000 per occurrence, providing coverage for loss or damage resulting from any negligent act, error or omission which arises out of rendering or the failure to render travel related services to a client.

All such foregoing insurance policies, copies of which shall be provided to FROSCH within fifteen (15) days of the execution of this Agreement, shall be written with insurance companies licensed and admitted to do business in the state where YTC maintains its main office, and rated no lower than A VIII in the most recent edition of A.M. Best's Rating Guide. All such policies shall be endorsed to provide that in the event of a cancellation, non-renewal or material modification, FROSCH shall receive thirty (30) days' prior written notice by certified mail. Failure to obtain insurance as specifically set forth in this Paragraph 7 and/or failure to provide FROSCH with proof thereof, shall constitute a material breach of this Agreement.

7. <u>Support Services.</u> During the term of this agreement, FROSCH may be asked to provide administrative support services to YTC.

A. Online booking setup and site support for Concur or other online tools supported by FROSCH. YTC will be charged at $4.25 per Concur online transaction

B. Outsourced Accounting Services. YTC will be charged $120,000 annually with adjustment if 25% increase or decrease in volume. This $120,000 fee will cover all Accounting Services<Payroll,A/R, A/P, Finacial/Statistical Data etc> except for Arc Transaction Processing

C. Full management of ARC transaction processing. YTC will be charged $50,000 annually

D. Sales and Marketing support. YTC will be charged a fee to be determined later

E. Human Resources assistance to include recruiting, benefits maintenance, and employee and IC management. YTC will be charged a fee to be determined later

F. Technology (Networks, phones, computers) will be charged at a fee to be determined later

8. <u>Non-Disclosure; Non-Solicitation.</u>

(a) During the term of this Agreement and after its termination for any reason, FROSCH and YTC agree not to furnish to any person, firm, company or corporation engaged in a business competitive with the other party, any information whatsoever as to the other party's relations, agreements or contracts with its suppliers, its vendors (including, but not limited to, airlines, hotels and car rental agencies), its clients (or the clients of other commission agents or contractors working with it) including the other party's client mailing list, list of customers, suppliers, prices, terms and negotiations or other information concerning the other party, its employees, contractors or their business.

(b) Without the consent of FROSCH, during the term of this Agreement and after its termination for any reason, for a period of (3) three years from termination, YTC shall neither solicit nor service the clients of FROSCH who were clients of FROSCH, its commission agents or contractors at the termination of this Agreement or at any time in the previous (3) three years nor solicit officers, employees or independent contractors to terminate their relationship with FROSCH.  Likewise, without the consent of YTC, during the term of this Agreement and for a period of (3) three years from its termination for any reason, FROSCH shall neither solicit nor service the clients of YTC who were clients of YTC, their commission agents or contractors on the date this Agreement was made or during its term, nor solicit officers, employees or independent contractors to terminate their relationship with YTC.

(c) YTC and FROSCH agree to not solicit the clients of each other during the term of this Agreement and in the event this Agreement is terminated, for a period of (3) three years thereafter.

9. Succession.  FROSCH and YTC wish to prepare for the following scenarios:

A) Colin Weatherhead. In the event Colin is no longer able to operate in his current capacity as CEO, the following will occur should Brenda and YTC's Senior Management agree 1) FROSCH will assume interim CEO responsibilities and work closely with YTC senior management including Brenda, Robin, Jacki, Chris and Shane for $100,000 annual fee 2) FROSCH will have an option of first refusal to acquire all company shares except those of Robin Sanchez at the following formula (x5 trailing 12 months EBITDA with following adjustment for Colin's takeout) whenever Brenda chooses to sell; 4) Grant Robin Sanchez an additional 5% of the company to vest 3 years from effective date of FROSCH ownership.

B) Jacki. In the event Jacki is no longer able to operate in her current capacity while Colin is still running YTC, the following will occur: 1) Colin/YTC will acquire Jackie's shares at the following formula set out in Jacki's current Ownership Agreement; 2) FROSCH will assume responsibility for the financial operations of YTC at the following terms (annual management fee of $120,000 which can be reviewed annually and adjusted if gross sales increase or decrease by more than 25%).

C) Bryan Leibman/FROSCH. In the event that Bryan Leibman is no longer able to serve as CEO and President of FROSCH or if FROSCH changes ownership, the following will occur: 1) YTC will have an option to continue with this agreement or to terminate at any time thereafter merely by providing 30 days written notice.

D) In the event other scenarios occur unforeseen above, FROSCH and YTC shareholders including Colin and Brenda Weatherhead agree to meet in good faith to achieve an equitable outcome in the spirit of the cooperation between Bryan, Colin, Brenda, Robin, and Jacki– current shareholders of FROSCH and YTC at the time of signing this agreement.

10. <u>Confidentiality</u>. The terms and conditions of this Agreement and any other agreement referred to herein shall be kept in strict confidence by the parties hereto, including their respective principals and employees.

11. <u>Miscellaneous</u>.

(a) The failure of either party hereto to enforce at any time any of the provisions or terms of this Agreement shall not be construed as a waiver of such provision or term, nor of the right of any party thereafter to enforce such term or provision.

(b) This Agreement may not be assigned without the prior written consent of both parties hereto.

(c) This Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.

(d) Notices to FROSCH shall be sent to:

> Bryan Leibman
> FT TRAVEL-NEW YORK, LLC
> One Greenway Plaza, Suite 800
> Houston, Texas 77046

Notices to YTC shall be sent to:

Colin Weatherhead
414 South Mill Ave, Tempe, AZ 85281

(e) This Agreement represents the entire agreement between FROSCH and YTC with respect to the subject matter herein and supersedes any and all other agreements between FROSCH and YTC regarding the same. There are no agreements or understandings concerning such Agreement, which are not fully set forth herein.

(f) Amendments to this Agreement shall become effective only upon the execution of a written instrument describing said amendment, signed by both parties hereto.

(g) This Agreement shall be governed by and interpreted under the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date and year first above written.

FT TRAVEL-NEW YORK, LLC

By: Bryan Leibman

_Brenda M Weatherhead_
Witness

YTC TRAVEL, LLC

By: Colin Weatherhead

_[signature]_
Witness

## "EXHIBIT A"

## GUARANTEE

1. <u>Guarantee of Obligation</u>. In order to induce FT TRAVEL-NEW YORK, LLC, d/b/a Frosch Travel ("FROSCH"), to enter into a certain Agreement dated November 21, 2014, between YTC and FROSCH (the "Agreement", which Agreement shall include any and all amendments and substitutions hereafter made) and in consideration thereof, the undersigned irrevocably agrees to guarantee payment and performance by YTC, when due, of all of the its obligations under the Agreement.

2. <u>Waiver of Defenses</u>. The obligations of the undersigned shall not be impaired, diminished or discharged, in whole or in part, by any extension of time granted by FROSCH, by any course of dealing between FROSCH and YTC, by the release of any other guarantor or other obligor or any collateral, or by any other act, omission, event or circumstance which might operate to discharge any other guarantor in whole or in part or which might operate as a defense, in whole or in part, to any obligation of any other guarantor or which might invalidate, in whole or in part, this guarantee (the "Guarantee").

3. <u>Bankruptcy Provisions; Expenses</u>. Subject to the provisions of Paragraph 4 herein, the undersigned agree to pay on demand (a) any amount which FROSCH is required to pay under any bankruptcy, insolvency or other similar law on account of any amount received by FROSCH under or with respect to the Agreement or this Guarantee, and (b) all expenses of collecting and enforcing this Guarantee including, without limitation, expenses and fees of legal counsel, court costs and the cost of appellate proceedings.

4. <u>Limitation of Liability</u>.

    (a) The liability of the undersigned for payments due under this Guarantee shall be joint and several with the other guarantors.

5. <u>Governing Law</u>. This Guarantee and the obligations of the undersigned hereunder shall be governed by and construed in accordance with the law of the State of California

6. <u>Remedies</u>. This Guarantee is a guarantee of payment and performance and not of collection. FROSCH shall not be required to resort to or pursue any of its rights or remedies under or with respect to any other agreement or any other collateral before pursuing any of its rights or remedies under this Guarantee.

7. <u>Delay and Waiver</u>. The failure or delay by FROSCH in exercising any of its rights hereunder in any instance shall not constitute a waiver thereof. FROSCH may not waive any of its rights except by an instrument in writing signed by it.

8. <u>Amendment</u>. This Guarantee may not be amended without the written approval of FROSCH.

9. <u>Assignment</u>. This Guarantee may not be assigned without the prior written consent of FROSCH.

10. <u>Binding</u>. This Guarantee shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto. In addition this Guarantee shall be binding upon and inure to the benefit of the heirs, successors and assigns to the Agreement.

[THE REST OF THIS PAGE LEFT INTENTIONALLY BLANK.].

Dated:_____

_____

_____

_____

_____

_____

State of _____   ss.
County of _____

The foregoing instrument was acknowledged before me this ___day of _____, 2014, by _____ who is personally known to me.

_____Notary Public

Comm. No. _____

_____

State of _____   ss.
County of _____

The foregoing instrument was acknowledged before me this ___day of _____, 2014, by _____ who is personally known to me.

_____Notary Public

Comm. No. _____

1

addendum

Apollo

120,000 annual segment committment x 5 years

penalties. return pro rata portion of signing and $1.50 shortfall liability per segment.

income. signing. 47 cents x 600,000 segments.

$2.43 monthly payment less expenses.

true-up of signing amount (47 cents) after delivering 600,000.

By [signature]

[signature] 11/23/14