PETER WANG *(admitted pro hac vice)*
   pwang@foley.com
YONATON ARONOFF *(admitted pro hac vice)*
   yaronoff@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016
TELEPHONE: 212.682.7474
FACSIMILE: 212.687.2329

ARCHANA R. ACHARYA, CA Bar No. 272989
   aacharya@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

Attorneys for Defendants YOUR TRAVEL CENTER, INC.; YTC TRAVEL, LLC; and COLIN WEATHERHEAD

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FT TRAVEL-NEW YORK, LLC, d/b/a FROSCH TRAVEL, <br><br> Plaintiff, <br><br> vs. <br><br> YOUR TRAVEL CENTER, INC.; YTC TRAVEL, LLC; and COLIN WEATHERHEAD, <br><br> Defendant. | Case No. 2:15-CV-1065-MMM-MANx <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** <br><br> Date: June 29, 2015 <br> Time: 10:00 a.m. <br> Place: Courtroom 780 <br>       Los Angeles, Roybal Building <br><br> **Case Filed: February 13, 2015** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, June 29, 2015, at 10:00 a.m., or as soon thereafter as counsel may be heard by the Honorable Margaret M. Morrow in Courtroom 780 of the above-entitled Court, located at 255 E. Temple Street, Room 780, Los Angeles, California 90012, Defendants Your Travel Center, Inc. ("YTC"); YTC Travel, LLC ("LLC"); and Colin Weatherhead ("Weatherhead") (collectively referred to as "Defendants") will move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff FT Travel-New York, LLC, d/b/a Frosch Travel's ("Frosch") Complaint for failure to state a claim.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which commenced several months ago. This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the records and pleadings on file herein, all of which the Court is requested to take judicial notice thereof, and upon such oral or documentary evidence as may be presented at the time of hearing thereon.

DATED: April 10, 2015            **FOLEY & LARDNER LLP**
                                 PETER WANG
                                 YONATON ARONOFF
                                 ARCHANA R. ACHARYA


                                 */s/ Yonaton Aronoff*
                                 YONATON ARONOFF
                                 Attorneys for Defendants YOUR TRAVEL
                                 CENTER, INC.; YTC TRAVEL, LLC; and
                                 COLIN WEATHERHEAD

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS .............................................................................. 1

III. ARGUMENT ................................................................................................... 5

    A. THE MOTION TO DISMISS STANDARD ....................................... 5

    B. THE COMPLAINT FAILS TO STATE A CLAIM ............................ 6

        1. The Alleged Agreement Is Unenforceable. ................................ 6

        2. The Claims Against Weatherhead Must Be Dismissed. ............. 9

IV. CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjustrite Sys. Inc. v. GAB Bus. Servs., Inc.*,
   145 F.3d 543 (2d Cir. 1998) ..............................................................................8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ..............................................................................1

*Apace Commc'ns, Ltd. v. Burke*,
   522 F. Supp. 2d 509 (W.D.N.Y. 2007)..............................................................5

*Arcidiacono v. Maizes & Maizes, LLP*,
   8 A.D.3d 119 (1st Dep't 2004) .........................................................................9

B*alk v. 125 W. 92nd St. Corp.*,
   24 A.D.3d 193 (1st Dep't 2005) .....................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................5

*Calabria v. Assoc. Hosp. Serv.*,
   459 F. Supp. 946 (S.D.N.Y. 1978) ...................................................................9

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
   607 F. Supp. 2d 600 (S.D.N.Y. 2009) ..............................................................7

*Dabrowski v. ABAX, Inc.*,
   64 A.D.3d 426 (1st Dep't 2009) .....................................................................10

*Den Hollander v. Copacabana Nightclub*,
   580 F. Supp. 2d 335 (S.D.N.Y. 2008) ..............................................................5

*Dorsett-Felicielli, Inc. v. Cnty. of Clinton*,
   No. 1:04-cv-01141, 2011 U.S. Dist. LEXIS 29197 (N.D.N.Y. 2011) .........7, 8

*Fed. Deposit Ins. Corp. v. Northwood Projects, Inc.*,
   95 Misc. 2d 373, 407 N.Y.S.2d 424 (Sup. Ct. N.Y. Cnty. 1978)....................7

*Gerard W. Purcell Assoc., Ltd. v. Royal Caribbean Cruise Line, Inc.*,
   No. 89 Civ. 7325 (JFK), 1990 U.S. Dist. LEXIS 9166 (S.D.N.Y. 1990) .......7

*Gould v. Board of Educ.*,
 81 N.Y.2d 446, 599 N.Y.S.2d 787 (1993) ........................................................ 6

*Hovensa, L.L.C. v. Technip Italy S.P.A.*,
 No. 08 Civ. 1221 (NRB), 2009 U.S. Dist. LEXIS 21191 (S.D.N.Y. 2009) ................... 9

*Kosher Provisions, Inc. v. Blue & White Food Prods. Corp.*,
 No. CV-04-361, 2005 U.S. Dist. LEXIS 48333 (E.D.N.Y. 2005) ................................ 7

*NCSPlus Inc. v. WBR Mgmt. Corp.*,
 37 Misc. 3d 227, 949 N.Y.S.2d 317 (Sup. Ct. N.Y. Cnty. 2012) .................................. 8

*Ope Shipping v. Allstate Ins. Co.*,
 687 F.2d 639 (2d Cir. 1982) ................................................................................... 8

*Reade v. Sullivan*,
 259 A.D. 229 (1st Dep't 1940) ............................................................................... 9

*Schiano v. Marina, Inc.*,
 No. 60361/08, 2009 N.Y. Misc. LEXIS 3979 (Sup. Ct. N.Y. Cnty. 2009) ................... 9

*Sherman v. Hallmark*,
 181 Misc. 2d 889, 695 N.Y.S.2d 508 (Civ. Ct., N.Y. Cnty. 1999) .............................. 8

*Turk v. Chase Manhattan Bank USA, N.A.*,
 No. 00 Civ. 1573, 2001 U.S. Dist. LEXIS 8862 (S.D.N.Y., 2001) ............................. 6

*Wilmington Trust Co. v. Metro. Life Ins. Co.*,
 No. 600242/08, 2008 N.Y. Misc. LEXIS 10085 (Sup. Ct. N.Y. Cnty. 2008) .............. 9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a case alleging the breach, and seeking specific performance, of an alleged deal that never materialized, and was rejected by Defendants Your Travel Center, Inc. ("YTC"); YTC Travel, LLC ("LLC"); and Colin Weatherhead ("Weatherhead") (collectively referred to as "Defendants") within several days of being partially memorialized (but never fully or properly executed). The allegations of Plaintiff FT Travel-New York, LLC, d/b/a Frosch Travel's ("Frosch") Complaint, along with the purported agreement itself (which is attached to the Complaint as Exhibit 1)[1], make clear that the so-called contract suffers from several fatal infirmities, including, among others, (i) a non-existent counterparty (YTC, the party to be bound, never signed it); (ii) the absence of material terms (such as a duration) and an unenforceable "agreement to agree"; (iii) a failure of consideration; and (iv) no real damages. As such, the "agreement" is nothing more than an expression of a nascent and incomplete bargain that was never fully or properly memorialized, and is therefore unenforceable and void. Moreover, Weatherhead has been sued in an individual capacity on the basis of a guarantee agreement (the "Guarantee") which it is undisputed that he never signed. None of the claims against any of the defendants can stand, and the Complaint should be dismissed with prejudice.

## II. STATEMENT OF FACTS

The Complaint is far from a model of clarity, and contains numerous irrelevant diversions not germane to this motion or Frosch's claims against Defendants. Focusing only on the core allegations, and accepting those allegations as true for purposes of this motion, the Complaint appears to allege as follows:

---

[1] The Court properly may rely on the document in connection with this motion to dismiss, because it is attached to, and incorporated by reference in, the Complaint. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 144 (2d Cir. 2011) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint") (citations omitted).

1    Frosch is a travel management company that is co-headquartered in New York,
2  New York and Houston, Texas. Compl. ¶¶ 3, 10. Bryan Liebman is the President and
3  CEO of Frosch. Id. at ¶ 11. Among Frosch's core businesses is the sale of air
4  transportation. Id. at ¶ 10. Frosch maintains various branch offices that serve as
5  "ARCs," or Airlines Reporting Companies. Id. at ¶ 16 n.1. ARCs are independent
6  entities which act as clearing agents for travel agencies' sales of airline tickets. Id.
7  Frosch, like other travel agencies, utilizes its network of ARCs to report their airline
8  ticket sales and to receive resulting commissions and payments from the airlines. Id.

9    YTC operates an independent retail travel agency selling air transportation and
10 other travel services, similar to Frosch but on a smaller scale. Compl. ¶¶ 14.
11 Weatherhead is its President and CEO. Id.

12   Liebman met Weatherhead in 2009 and it is alleged that over the years, the two of
13 them discussed various potential business opportunities. Compl. ¶ 15. One of the
14 concepts they discussed was an arrangement whereby YTC would report all of its airline
15 sales through a Frosch ARC branch office, until some unspecified and uncertain time in
16 the future when Mr. Weatherhead might decide to exit the travel business and sell YTC to
17 Frosch. Id. at ¶ 16. In return for this open-ended understanding, YTC would be given
18 access to Frosch's network of service providers, relationships, and alleged operational
19 and technical expertise, and would be entitled to favorable commissions and payment
20 rates as a result of using Frosch's high-volume ARC. Id. at ¶¶ 17-20. According to the
21 Complaint, in the parties' discussions it "was always clear" that Weatherhead would
22 eventually sell YTC to Frosch. Id. at ¶ 21. Frosch maintains that these conversations
23 continued periodically from 2009 through 2014, despite the fact that YTC had entered
24 into a contractual arrangement with a different travel management company in August of
25 2009. Id. at ¶ 23.

26   In or around November of 2014, Liebman and Weatherhead resumed discussions
27 about a potential business relationship whereby YTC would transfer its business to a
28 Frosch ARC, and ultimately would be sold to Frosch when Weatherhead decided to

pursue other interests. Compl. ¶¶ 24-25. Frosch alleges that this proposed arrangement was documented in the form of "a valid, binding, and fully enforceable agreement" entered into on or about November 23, 2014. Id. at ¶ 26 (and see Ex. 1 to Compl.). According to the Complaint, Frosch's counterparty to this alleged agreement mistakenly was identified as LLC by YTC's COO, a non-existent entity, and that the supposed error was not corrected in the month leading up to the alleged execution of the contract. Id. at ¶¶ 28-29. Frosch contends that YTC was the intended counterparty. Id. at ¶ 30. It is undisputed that YTC never signed the document.

Despite its purporting to bind a non-existent entity, Frosch contends that the agreement formalized an arrangement whereby YTC would transfer all of its business to a new Frosch ARC branch office that Frosch was to set up at YTC's main location. Compl. ¶ 34. Notably, Frosch does not allege that this new ARC branch was ever established by Frosch (it was not), or that YTC ever took any steps whatsoever to perform this aspect of the supposed agreement (it did not), or that YTC ever received any commissions or payments through a Frosch-operated ARC (there were none). According to the Complaint, Weatherhead and Leibman separately agreed that performance was not scheduled to commence until January 5, 2015. Id. at ¶ 51. Frosch nevertheless asserts - incredulously and incomprehensibly - that it "performed its end of the bargain" because it "took steps to plan for YTC's performance" by notifying its service providers that YTC would eventually begin reporting sales through a Frosch-established ARC. Id. at ¶ 52 Frosch alleges no other acts of supposed performance.

The agreement is alleged to include a succession plan whereby, should Weatherhead decide to depart at some unspecified time in the future, Frosch would assume interim CEO responsibilities and receive a right of first refusal ("ROFR") to acquire a controlling interest in YTC. Compl., ¶¶ 35-36. A review of the ROFR reveals that it only becomes effective upon the happening of several contingencies. First, Frosch's supposed right to assume CEO responsibilities and to "acquire all company shares except those of [COO] Robin Sanchez" is expressly triggered only "should Brenda

[Weatherhead] and YTC's Senior Management agree." Compl. Ex. 1, p. 5. "YTC Senior Management" is not fully defined. Second, Frosch's alleged right to acquire Brenda Weatherhead's shares would not arise until "whenever Brenda chooses to sell." Compl. ¶ 36 and Ex. 1, p. 5. Third, the succession section contains yet another "agreement to agree" clause, stating, in vague terms:

> In the event other scenarios occur unforeseen above, FROSCH and YTC shareholders including Colin and Brenda Weatherhead agree to meet in good faith to achieve an equitable outcome in the spirit of cooperation between Bryan, Colin, Brenda, Robin, and Jacki – current shareholders of FROSCH and YTC at the time of signing this agreement

Compl. at Ex. 1, p. 6.

The alleged agreement contains no temporal term. See Compl., Ex. 1. Frosch alleges that the only circumstance in which the agreement could be terminated by YTC would be in the event that Frosch were to change ownership or Liebman was no longer able to serve as Frosch's President and CEO. Compl. ¶¶ 39, 41. Frosch appears to be of the view that, absent any of that happening, the agreement would continue in perpetuity, although the alleged agreement is completely silent as to duration and certainly contains no explicit language stating that it is to last forever.

The Complaint alleges that "Mr. Weatherhead, in his personal capacity, expressly guaranteed YTC's performance under the FROSCH agreement. He also agreed to execute a personal guarantee in the form attached as an exhibit to the FROSCH agreement." Compl. ¶ 47. It is undisputed that the alleged Guarantee was never signed by Weatherhead. Compl., Ex. 1. The attached unsigned Guarantee expressly states that it is to be executed by Weatherhead "in consideration" for Frosch's execution of the agreement.

Frosch contends that within several days of being executed by Frosch and non-entity LLC, Defendants terminated it. Compl. ¶ 54. Frosch asserts the following claims in its Complaint: (i) specific performance against YTC (Count One); (ii) breach of contract against YTC (Count Two); (iii) breach of contract against Weatherhead relating

to YTC's alleged non-performance (Count Three); (iv) reformation (Count Four); (v) breach of contract against LLC (Count Five); (vi) breach of contract against Weatherhead relating to LLC's alleged non-performance (Count Six); and (vii) breach of contract against Weatherhead relating to Weatherhead's alleged individual breaches (Count Seven). Frosch seeks specific performance of the alleged agreement, and damages including compensation for its alleged loss of the future opportunity to acquire YTC and its alleged loss of additional commissions and fees that it would have earned had YTC transferred its business to a Frosch-operated ARC.

## III. ARGUMENT

### A. THE MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that dismissal is warranted where a complaint fails to state a claim upon which relief may be granted. On a motion to dismiss, a court must assume the truth of the factual allegations of the complaint and make all reasonable inferences in favor of the plaintiff. *Den Hollander v. Copacabana Nightclub*, 580 F. Supp. 2d 335, 337 (S.D.N.Y. 2008).[2] While it was once the standard that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" "the Supreme Court has recently stiffened the pleading standards under the Federal Rules." *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 515 (W.D.N.Y. 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Under the current standard, to survive a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint must meet the standard of plausibility rather than conceivability. Id. As the Supreme Court announced in *Bell Atl. Corp. v. Twombly*,

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

---

[2] Defendants assume for purposes of this motion that New York law applies, without prejudice to Defendants' position that the agreement (which contains a New York choice-of-law provision) was never fully formed and is unenforceable and void.

and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

### B. THE COMPLAINT FAILS TO STATE A CLAIM

#### 1. The Alleged Agreement Is Unenforceable.

By the very allegations of the Complaint, the supposed agreement which Frosch seeks to enforce (and sue for breach of) is unenforceable for several independent reasons. First, it seeks to bind a party that did not sign it (and identifies as its counterparty an entity that does not exist). Second, it lacks material terms such as duration and represents an unenforceable "agreement to agree." Third, there is a clear failure of consideration. Fourth, Frosch suffered no damages. Each of these is grounds for dismissal.

It is hornbook law that a contract cannot be enforced against a party that never signed it and which took no steps to perform the agreement. *Turk v. Chase Manhattan Bank USA, N.A.*, No. 00 Civ. 1573, 2001 U.S. Dist. LEXIS 8862, at *4-5 (S.D.N.Y. , 2001). Here, it is undisputed that YTC, the entity against whom Frosch seeks to compel performance, was not a signatory to the alleged agreement, and neither YTC nor LLC is alleged to have taken any steps to perform it. The alleged agreement may not be enforced against YTC.

Nor is reformation warranted. Frosch's counterparty as identified in the document is LLC, a non-existent company. *See supra* at 3. The Complaint alleges that this was simply an "error" by YTC COO. Id. Even if that were the case, Frosch took no steps to correct that "error" in the month leading up to its execution of the document. Id. Frosch contends that the inclusion of LLC "was based upon a mutual mistake of fact that is material and goes to the foundation of the agreement." Compl. ¶ 77. If that is so, the proper remedy for a mutual mistake under these circumstances would be rescission. *See, e.g., Gould v. Board of Educ.*, 81 N.Y.2d 446, 453, 599 N.Y.S.2d 787 (1993) ("Generally, a contract entered into under a mutual mistake of fact is voidable and subject to rescission").

The alleged agreement is also facially and fatally incomplete, in that it lacks material terms including, among other things, any defined duration. *See supra* at 4-5. As such, it is unenforceable, or, at the very least, terminable at will (and therefore validly terminated by defendants). *See, e.g., Gerard W. Purcell Assoc., Ltd. v. Royal Caribbean Cruise Line, Inc.*, No. 89 Civ. 7325 (JFK), 1990 U.S. Dist. LEXIS 9166, at *5 (S.D.N.Y. 1990) ("In the absence of material terms, there is no contract and whatever agreement exists is simply too vague to be enforceable" (dismissing contract claim where alleged agreement lacked duration term)); *Kosher Provisions, Inc. v. Blue & White Food Prods. Corp.*, No. CV-04-361, 2005 U.S. Dist. LEXIS 48333, at *15 17 (E.D.N.Y. 2005) (dismissing breach of contract and specific performance claims where contract lacked "indispensable terms" such as "duration").

Moreover, the lack of a duration term would make the contract terminable at will. *Fed. Deposit Ins. Corp. v. Northwood Projects, Inc.*, 95 Misc. 2d 373, 375, 407 N.Y.S.2d 424 (Sup. Ct. N.Y. Cnty. 1978) ("Absent a fixed or determinable duration or an express provision that the duration is perpetual, the contract is terminable at will") (citations omitted). As an at will contract, Defendants were free to terminate it and cannot be liable for breach. *Dorsett-Felicielli, Inc. v. Cnty. of Clinton*, No. 1:04-cv-01141 (LEK/RFT), 2011 U.S. Dist. LEXIS 29197, at *10 (N.D.N.Y. 2011) ("The essential element of breach of contract is absent when a contract is terminable at will").[3]

As discussed *supra* at 4, the alleged agreement also contains, in its penultimate succession provision, several impermissible "agreements to agree." The entire succession provision is made conditional on "should Brenda [Weatherhead] and YTC's Senior Management agree" at some unspecified date in the future. Id. "YTC's Senior Management" is not fully defined; Brenda Weatherhead is not a party to the document

---

[3] To the extent Frosch may claim that the alleged agreement was perpetual, that argument fails, because such a provision must be *express*. *See, e.g.*, *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 607 F. Supp. 2d 600, 602 (S.D.N.Y. 2009) ("[I]f the parties to a contract intend for it to be perpetual, they must expressly say so" (citation omitted)( court refused to reform at will contract which lacked duration term). Clearly, there is no such express provision in the alleged agreement at issue here.))

1 (she signed it as a "witness" to Liebman's signature). Compl. Ex. 1, p. 7. Frosch's ROFR only becomes triggered "whenever Brenda [Weatherhead] decides to sell." Id. p. 5. Finally, the provision acknowledges its own lack of certainty and completeness, stating that "Frosch and YTC shareholders" (whomever they may be at the time the provision is triggered) "agree to meet in good faith to achieve an equitable outcome" in the event unforeseen and unaddressed scenarios arise in the future. *Supra* at 4. Such "agreements to agree" are unenforceable. *See, e.g., Adjustrite Sys. Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998) ("where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract" but rather an unenforceable agreement to agree).

Additionally, the alleged agreement suffers from a fatal lack of consideration. "It is axiomatic that every contract must be supported by valid consideration." *NCSPlus Inc. v. WBR Mgmt. Corp.*, 37 Misc. 3d 227, 237, 949 N.Y.S.2d 317 (Sup. Ct. N.Y. Cnty. 2012) (dismissal warranted where "The Contract fails to contain, and plaintiff failed to point out, any promise or obligation it undertook") (citations omitted). Here, the Guarantee states that it was to be executed by Weatherhead "in consideration" for Frosch's obligations. *See supra* at 5. As it is undisputed that Weatherhead never signed the Guarantee, no such consideration was ever provided and the agreement is therefore invalid. Moreover, the consideration that Frosch was to provide – the establishment of a new ARC branch – is not alleged to ever have occurred (and it did not). As such, neither side provided the consideration required for the formation of a contract, entitling defendants to rescind the agreement to the extent it was even formed. *See Ope Shipping v. Allstate Ins. Co.*, 687 F.2d 639, 642 43 (2d Cir. 1982) ("Lack of consideration is available as a defense between parties to an executory contract" (citation omitted)); *see also Sherman v. Hallmark*, 181 Misc. 2d 889, 893-94, 695 N.Y.S.2d 508, 512, (Civ. Ct., N.Y. Cnty. 1999) ("rescission is permitted where there has been a failure of consideration").

Finally, "[i]n the absence of allegations of fact showing damage, allegations of a

breach of contract are not sufficient to sustain a complaint. *Reade v. Sullivan*, 259 A.D. 229, 229 (1st Dep't 1940). Here, Frosch alleges no real damages. According to the Complaint, within several days of (partially and incompletely) executing the supposed contract, defendants terminated it. *See supra* at 5. The only steps Frosch alleges to have taken in furtherance of the agreement consisted of alerting certain of its service providers that YTC would ultimately begin reporting its sales through a Frosch ARC. *See supra* at 3-4. It is simply not believable that Frosch suffered any compensable damages during this brief interim, further warranting dismissal of its claims. *See, e.g., Calabria v. Assoc. Hosp. Serv.*, 459 F. Supp. 946, 949 (S.D.N.Y. 1978) ("Under New York law, in the absence of allegations of facts showing damages, allegations of a breach of a contract will not be sufficient to sustain a complaint"); *Wilmington Trust Co. v. Metro. Life Ins. Co.*, No. 600242/08, 2008 N.Y. Misc. LEXIS 10085, at *12 (Sup. Ct. N.Y. Cnty. 2008) (dismissing the first cause of action for breach of contract where damages were not alleged); *Arcidiacono v. Maizes & Maizes, LLP*, 8 A.D.3d 119, 120 (1st Dep't 2004) (affirming dismissal of breach of contract claim where plaintiff failed "to allege any basis for an award of damages").

### 2. The Claims Against Weatherhead Must Be Dismissed.

Frosch asserts claims against Weatherhead in his individual capacity, alleging that he promised to guarantee YTC's performance. As discussed *supra* at 5, Weatherhead never executed the Guarantee, and, as a result, it may not be enforced against him. *See Hovensa, L.L.C. v. Technip Italy S.P.A.*, No. 08 Civ. 1221 (NRB), 2009 U.S. Dist. LEXIS 21191, at *16-17, (S.D.N.Y. 2009) (granting dismissal of parent company under a guarantee clause because only the subsidiary defendant signed the contract, and the attached unsigned guarantee exhibit was not signed by the parent company).

Absent an executed guarantee, the agreement may not be enforced against Weatherhead. Weatherhead did not sign the alleged agreement in his individual capacity, but rather, he signed on behalf of LLC. Because of this, the claims against him must be dismissed. *See, e.g., Schiano v. Marina, Inc.*, No. 60361/08, 2009 N.Y. Misc. LEXIS

3979, at *10 (Sup. Ct. N.Y. Cnty. 2009) (dismissing cause of action for breach of shareholder agreement in so far as it is asserted against the company president, where he did not sign in his personal capacity); *see also Dabrowski v. ABAX, Inc*., 64 A.D.3d 426, 427 (1st Dep't 2009) (breach of contract claim against individual defendants should have been dismissed because the individuals did not sign the contract); B*alk v. 125 W. 92nd St. Corp.*, 24 A.D.3d 193, 193 (1st Dep't 2005) (affirming trial court's dismissal of breach of contract claim against individual shareholders who were not signatories to the lease sued upon).

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

DATED:  April 10, 2015                    **FOLEY & LARDNER LLP**
                                          PETER WANG
                                          YONATON ARONOFF
                                          ARCHANA R. ACHARYA


                                          */s/ Yonaton Aronoff*
                                          YONATON ARONOFF
                                          Attorneys for Defendants YOUR TRAVEL
                                          CENTER, INC.; YTC TRAVEL, LLC; and
                                          COLIN WEATHERHEAD